## TOWNSHIP OF McINTYRE v. J. P. WALSH.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LYCOMING COUNTY.

Argued March 18, 1890—Decided November 10, 1890.
[To be reported.]

1. Implied contracts arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract: Hertzog v. Hertzog, 29 Pa. 465.

(a) A township clerk, being requested by the auditors to produce the township books, promised to appear before them at a certain time. At the time appointed he failed to appear, and the auditors issued a subpœna which he refused to obey.

(b) Being brought before them on an attachment, he refused to produce the books, whereupon the auditors committed him to jail. Afterwards it was agreed that he should produce the books and that the proceedings against him should be dropped:

2. A promise, upon the part of the clerk, to reimburse the township for its expenditures on account of the services of the auditors during the time they were endeavoring to procure the books, and the costs of executing the process issued by them, could not be implied in such case.

3. The terms upon which the difficulty between the auditors and the clerk was settled, excluded the idea of any recourse by one party to the other for anything growing out of or incident to that difficulty; wherefore, the township could not maintain assumpsit against the clerk for said expenditures.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 100 January Term 1890, Sup. Ct.; court below, No. 554 June Term 1888, C. P.

On June 2, 1888, there was entered in the court below, by appeal from the judgment of the city recorder of Williamsport, an action of assumpsit, brought by the township of McIntyre against J. P. Walsh, for the recovery of certain costs and expenses incurred and paid by the plaintiff. The defendant pleaded non-assumpsit, payment and set-off.

At the trial, on May 7, 1889, the following facts were shown upon the part of the plaintiff:

Statement of Facts.

In the year 1885, the defendant was the town clerk of the plaintiff township and had the custody of the township books. Sometime during that year, D. C. Flanagan, J. W. Rogers and S. C. Myers met and organized as the board of auditors of said township. They had not then filed with the town clerk copies of their oaths of office, as required by § 86, act of April 15, 1834, P. L. 553. Immediately after their organization, two of the auditors, Flanagan and Rogers, went to see the defendant. Rogers testified that the defendant agreed to meet with the auditors the next morning, but did not do so; that Flanagan and the witness then went to see the defendant again, who told them that they were not qualified; and that the witness then handed the defendant his oath of office, and the defendant agreed to meet them on the succeeding day.

On the following day the auditors met, but the defendant did not meet with them. The auditors thereupon placed in the hands of W. H. Van Wert, a constable of the township, a subpœna commanding the defendant to appear before them. The constable served the subpœna, but the defendant refused to obey it. The constable reporting this refusal to the auditors, they made out an attachment against the defendant and sent the constable to execute it. He did so and brought the defendant before them. In response to a demand for the production of the township books, the defendant said to the auditors: "You have got the wrong Irishman; the wrong pig by the ear; I will not give up the books, and you will not audit them." After sending the constable with a search-warrant to the defendant's house, and receiving a report that they could not be found, the auditors issued a commitment of the defendant to the county jail, and sent him to Williamsport, the county seat, in charge of the constable.

On arriving at Williamsport, the defendant asked to see his attorney, and the constable permitted him to do so. An arrangement was made for a meeting the next morning, at the chambers of the president judge of the county, with the attorney of the commissioners of the township, for the purpose of endeavoring to effect an adjustment of the matter. At the suggestion of the president judge, the township auditors were telegraphed for, to come to Williamsport. They did so, but before their arrival counsel had agreed on a settlement, to the effect that the

Charge of Court below.

proceedings by the auditors against the defendant should be dropped, and that he should return home and deliver up the books to them. The defendant having complied with his part of the arrangement, he was discharged from arrest.

The auditors then entered on the book, containing their report, a charge against the defendant of the costs and expenses incurred in their proceedings, with an itemized statement thereof; the items consisting of the costs of the service of the subpœna, the attachment, the search-warrant and the commitment; the expenses of the auditors for railroad fare to Williamsport, and the compensation of the auditors for the time spent by them in their efforts to obtain the books from the defendant.

At the close of the testimony for the plaintiff, the defendant offering no testimony, the court, METZGAR, P. J., after refusing a motion for a compulsory nonsuit, charged the jury in part as follows:

The auditors proceeded legally under this section of the act of assembly: [Here the court read § 50, act of April 15, 1834, P. L. 546, extended to township auditors by § 105 of the same act.]

Now, they had a right to issue all the processes that the Court of Common Pleas could issue, to get possession of these books and papers. Consequently, if the man refused to answer the subpœna, they had the right to issue an attachment and commit him for contempt. "And such subpœna and attachment," etc. We take it that that last clause is mandatory upon the coroner or sheriff to serve the writs. It does not follow that the service may not be made by some other officer, although he could not be compelled to make it.

[You will observe that there is more in this than the simple fact of his refusal to appear. He had agreed to appear. It was in consequence of that that the delay occurred. Hence, you may be justified in finding that there was an implied promise to pay these costs, resulting from his promise to appear there and his failure to do so, in consequence of which these costs became necessary.] [3] . . . . .

We are asked by the counsel for the defendant to charge the jury:

1. The plaintiff is not entitled to recover in this action, unless

Charge of Court below.

the evidence shows an assumpsit, or promise of the defendant to pay, either express or implied.

Answer: This point we answer in the affirmative, with this qualification; that the implied promise may arise from a certain state of facts existing, from which you may reasonably infer that he, as a matter of law, is bound to pay. For instance, the man agreed to appear and did not appear, and in consequence of that these damages were incurred; then it would be a matter from which you could infer a promise.

2. There is no evidence before you to prove an express promise of the defendant.

Answer: We affirm that. I believe there is no expressed promise of the defendant to pay these costs. That, however, is not necessary, if the circumstances are such as you may imply a promise from.

3. The evidence before you is not sufficient to raise an implied promise of the defendant to pay.

Answer: This we cannot affirm, because it is for you to determine whether or not there is sufficient evidence to infer an implied promise.[4]

15. The various processes issued against the defendant by the auditors of McIntyre township, which are in evidence before you, were some of them issued illegally and without authority of law, namely, the search-warrant and commitment; and the others, namely, the subpœna and attachment, were served and executed illegally and in a manner unauthorized by law, namely by a constable; and the said auditors were therefore trespassers throughout, and the said township cannot recover in this action from the defendant pay for the very time which the said auditors so spent in committing trespasses against the defendant.

Answer: We have already answered that point by saying to you that we think the auditors had power to issue these legal processes, unless it might be the search-warrant. They had a perfect right to serve them in the manner in which they did. It seems there was no force used. The books were refused. There was no question about their being at his house on his own admission. But it might not have been a case which justified a search-warrant; therefore, the amount charged for the search-warrant, $1.00, ought not to be allowed; but this would

not make them trespassers in the whole proceeding. The other proceedings were legal; the subpœna, attachment and commitment, if you believe the evidence on the part of the plaintiff.

16. Under all the evidence, your verdict should be for the defendant.

Answer: We cannot affirm this point, because the evidence is for you.[8]

The plaintiff, on his part, has submitted the following points:

1. If the jury believe from all the evidence that, in order to protect the interest of the township of McIntyre, the plaintiff paid the costs and expenses incurred through the arrest, etc., of the defendant, judgment should be for the plaintiff for the said costs and expenses.

Answer: We affirm this, with this qualification; if you find from the evidence that he agreed to come there and did not come, and then made it necessary for the issuing of this attachment by reason of his not doing as he agreed to. Because, if he had not agreed, the officers would not have assembled and would have been saved all this trouble.[9]

The jury returned a verdict for the plaintiff for $27.88. Motions in arrest of judgment and for a new trial having been refused, judgment was entered on the verdict, when the defendant took this appeal, assigning for error, inter alia:

3. The part of the charge embraced in [ ] [3]

4, 8. The answers to defendant's points.[4] [8]

9. The answer to plaintiff's point.[9]

*Mr. T. M. B. Hicks,* for the appellant:

1. This action was brought to recover the costs of proceedings to get from the defendant the books which the alleged auditors claimed the defendant had. While it is in evidence that the defendant said to one of them that he would appear before them at a certain time, that promise, not coupled with any agreement to produce the books, gives no ground for implying a promise to pay the costs which those parties made to get the books. The defendant never manifested, by act or word, any intention to pay these costs. On the contrary, his whole conduct manifested an intention not to pay them.

Arguments.

There could be, therefore, no implied contract to pay them : Hertzog v. Hertzog, 29 Pa. 465, 468.

2. If any contract at all can be raised here, it must be a constructive one. " Constructive contracts are fictions of law, adopted to enforce legal duties by actions of contract, where no proper contract exists, express or implied : " Hertzog v. Hertzog, 29 Pa. 465. But certainly, fictions of law are for the court to decide, and not the jury. Again ; as the defendant offered no evidence, and the testimony for the plaintiff was uncontradicted, the court was bound to declare its legal effect : Johnston v. Gray, 16 S. & R. 361; Wannamaker v. Burke, 111 Pa. 423 ; McFall v. Ice Co., 123 Pa. 253. But there is no principle of law fixing the defendant's liability in this instance. The expenses sought to be recovered are really costs, in the most technical sense of the term; and, as there is no act of assembly providing for the payment of the costs of such proceedings, they cannot be recovered : Commonwealth v. Commissioners, 8 S. & R. 151 ; Stewart v. Baldwin, 1 P. & W. 461.

*Mr. F. P. Cummings*, for the appellee :

1. As Walsh failed to meet the auditors, after having promised to do so in answer to their demand for the books, for two days in succession, the court was justified in instructing the jury that they might find from this an implied promise to pay the costs incurred by reason of his default. But he was the town clerk, and, as such, the legal custodian of the books of the township, and was under a legal obligation to produce the books upon demand of the officers. On breach of that legal obligation, he was answerable in assumpsit for the consequential damages resulting therefrom : 1 Chitty's Pl., 13th Am. ed., 135.

2. Under § 105, act of April 15, 1834, P. L. 556, the auditors had the same powers as the Courts of Common Pleas, to enforce the production of books, etc. While they could not sentence the offender for costs, as the courts could, they could adjudge the costs against him. This they did by entering an itemized statement of them upon the official records. The costs so adjudged became a legal charge upon the defendant, and as the township, to protect her interests, paid them, she may have assumpsit for their recovery : Hogg v. Longstreth,

97 Pa. 255. The defendant cannot complain of the submission to the jury, for the court ought to have given binding instructions for the plaintiff.

OPINION, MR. JUSTICE McCOLLUM:

The auditors of McIntyre township, in the county of Lycoming, requested the appellant, who was the town clerk, to produce before them at their meeting in January, 1886, the books and papers of the township in his possession, and he promised, but failed to comply with their request. When he was invited to attend their adjourned meeting, he claimed that they were not qualified as township auditors, and declined to appear. They then issued a subpœna, which was duly served on him, and, as he did not obey it, they sent out an attachment, on which he was brought into their presence. They wanted the books and papers, but he did not bring them; so they issued a search-warrant, armed with which the constable hastened to his house, and made diligent search for them. The appellant declared that they should not have the books and papers, and assured them that they had "the wrong pig by the ear;" whereupon, they concluded to commit him for contempt, and made out and placed in the hands of the constable their warrant for that purpose. By virtue of this warrant, the constable conveyed the appellant to Williamsport, where an arrangement was effected by which he was to produce the books and papers before the auditors, and they were to abandon the proceedings against him. The auditors were summoned to Williamsport by their counsel, but the settlement was completed before their arrival there, and they approved it.

In 1888, the township brought this suit to recover the fees of the auditors for the time it is alleged they spent in trying to obtain the books and papers, their expenses in going to and returning from Williamsport, and reasonable compensation for the services of the constable in the execution of the several writs issued by them. In the settlement between the auditors and the appellant, nothing was said about costs and expenses, and it is not pretended that he ever promised to pay them. There is no evidence of a demand upon him for their payment, or of any notice to him of a claim that he was liable for them, until he appeared in answer to the summons in this action.

The case was submitted on the theory that these accrued in consequence of his failure to produce the books and papers before the auditors at their first meeting, as he had promised to do, and that he ought therefore to pay them. The learned judge instructed the jury that they might imply from the facts recited a promise by the appellant to pay the township the fees and expenses claimed. Implied contracts arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract: Hertzog v. Hertzog, 29 Pa. 465. No facts or circumstances appear in this case from which a promise to pay the costs and expenses in question can be implied. There is no evidence which will justify an inference that it was intended by the parties that, if the appellant failed to attend the first meeting of the auditors, he should pay to the township their fees for that day. If any liability accrued after that date, it was because of his refusal to obey their subpoena, and there is no element of contract in that. The terms of the settlement exclude the idea of any recourse by one party to the other for anything growing out of or incident to their difficulty.

We do not approve the conduct of the appellant, but we decide that, upon the facts disclosed by the evidence, an action of assumpsit cannot be maintained by the township against him, for the fees and expenses of the auditors, or the services of the constable.

The judgment is reversed.